[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12997

Non-Argument Calendar

_____

LEROY THOMAS,

                                        Plaintiff-Appellant,

*versus*

GENERAC POWER SYSTEMS INCORPORATED,
AARON P. JAGDFELD,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:18-cv-00495-RH-MJF

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Leroy Thomas, a Florida citizen, bought a $4,500 generator from Generac Power Systems, Inc., which is based in Wisconsin. Alleging that the generator stopped working, Mr. Thomas filed a *pro se* diversity action against Generac and Aaron Jagdfeld, its president and CEO (and also a Wisconsin citizen). *See* 28 U.S.C. § 1332(a)(1). The district court dismissed the second amended complaint for lack of diversity jurisdiction because Mr. Thomas failed to plausibly allege an amount in controversy exceeding $75,000. We affirm.

## I

Mr. Thomas brought four Florida state law claims—a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.211(2), fraudulent inducement, fraudulent misrepresentation, and breach of contract—against Generac and Mr. Jagdfeld. He alleged that the defendants sold him a defective $4,500 generator and failed to fix it pursuant to the machine's five-year warranty. According to the complaint, the generator

stopped working after 315 hours of use. As damages for the allegedly defective product, Mr. Thomas sought $1,279,000.[1]

As noted, the district court dismissed the complaint for lack of diversity jurisdiction. It ruled that Mr. Thomas had adequately pled claims for breach of contract, fraud, and a violation of the FDUTPA, but concluded that Mr. Thomas did not plausibly allege the requisite amount in controversy needed to establish diversity jurisdiction. The district court found that the "most obvious measure of damages" for Mr. Thomas' breach of contract and fraud claims was the $4,500 purchase price for the generator and, while "[i]ncidental damages increase[d] these amounts slightly," Mr. Thomas "ha[d] not alleged facts showing consequential damages anywhere near as great as would be needed, even when combined with" everything else, "to meet the jurisdictional amount." Importantly, the district court also found that Mr. Thomas had "no colorable claim for punitive damages in an amount sufficient to meet the amount-in-controversy, even when combined" with his other damages claims.

On appeal, Mr. Thomas argues that the district court erred in (1) dismissing his complaint for lack of jurisdiction after erroneously calculating his possible damages, (2) not allowing him to submit a third amended complaint, and (3) denying his Fed. R. Civ. P.

---

[1] Mr. Thomas alleged that the generator shocked him and caused him physical injuries, but he did not assert any personal injury claims. So we do not consider any damages that might be available for such claims.

60(b) motion for reconsideration.  He has also filed a motion on appeal to strike the supplemental appendix filed by the defendants (the appellees here) because, he argues, it is misleading and designed to improperly sway this court.

## II

Federal district courts have original jurisdiction of civil actions between citizens of different states where the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1); *Peebles v. Merrill Lynch,* et al., 431 F.3d 1320, 1325 (11th Cir. 2005).  A plaintiff invoking federal jurisdiction bears the burden of alleging with sufficient particularity a proper jurisdictional basis in his complaint. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1272–73 (11th Cir. 2000) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938)).  If challenged, the party invoking diversity jurisdiction bears the burden of demonstrating that the jurisdictional amount is satisfied by a preponderance of the evidence.  *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).  On appeal, "we review for clear error any factual determinations necessary to establish jurisdiction" in a diversity case.  *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014).

Dismissal of a case for lack of diversity jurisdiction with respect to the amount in controversy is proper where the complaint makes it clear "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289. *See also Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).  This standard gives "great weight to [the] plaintiff's

assessment of the value of [his] case." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994)).

Whether the allegations support the requisite amount often depends on the damages available under state law. *See* A. Benjamin Spencer, 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1213 (4th ed. & April 2022 update). *See also Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1012 (5th Cir. 1979) (quoting *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129, 131 (5th Cir. 1969)). When available, punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases. *See Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987).[2]

In *Barry v. Edmunds*, 116 U.S. 550, 559 (1886), the Supreme Court identified two ways for a court to conclude to a legal certainty that the jurisdictional amount has not been met. First, a court may conclude, as a matter of law, that the jurisdictional amount is not recoverable, such as where the nature of the action caps the amount that is recoverable. *See id.* at 559–60. Second, the court may find, as a matter of fact, that the amount of claimed

---

[2] As a constitutional matter, the Supreme Court has held that "courts must ensure that the measure of [punitive damages] is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003).

damages has been projected beyond the amount of a reasonable expectation of recovery, but such a finding must rest on facts in the record. *See id. See also* 14AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3713 (4th ed. & April 2022 update) (describing cases where courts have found that the requisite amount-in-controversy is unavailable to a legal certainty).

## III

With these background principles in mind, we turn to the legal claims asserted by Mr. Thomas, the damages sought for those claims, and what Florida law says about those damages.

## A

For Count I, the FDUTPA claim, Mr. Thomas sought $4,500 in damages for the cost of the generator, $80,000 in "additional actual damages," and $150,000 in "actual damages," for a total of $234,500. In response to the defendants' motion to dismiss for lack of jurisdiction, Mr. Thomas attempted to itemize the damages he sought for each count. For his FDUTPA claim, he alleged that his damages included $4,500 for the generator, $285 for the sales tax paid, $135,000 for the "useful life" of the generator, $3,228 for drinking water purchased while the generator was not working, $3,190 for laundry costs while the generator was not working, $2,500 for an electrician's installation estimate that he did not use or pay for, and an unspecified amount in punitive damages.

Under the FDUTPA, a successful plaintiff is entitled to actual damages, Fla. Stat. § 501.211(2), which in the case of a defective

product are the "difference in the market value of the product . . . in the condition in which it was delivered and its market value in the condition which it should have been delivered." *Fort Lauderdale Lincoln Mercury, Inc., v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998). If a product has no value, the actual damages consist of the purchase price. *See id.*

A plaintiff may not recover consequential damages under the FDUTPA. *See Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008) (consequential damages are not included in actual damages under the FDUPTA). The FDUPTA's remedies provision, § 501.211(2), does not mention punitive damages, and we have found no cases allowing such damages for an FDUPTA claim. The academic commentary we have located indicates (though summarily) that punitive damages are not recoverable under the FDUPTA. *See* Henry P. Trawick, Jr., 10 Fla. Pleading & Practice Forms § 79.7 (May 2022 update); Steven Fox, Litigation Under Florida's Deceptive and Unfair Trade Practices Act, the Florida Antitrust Act, and/or Federal Antitrust Statutes § 20.9.B.16 (Fla. Bar 2022). Mr. Thomas has not cited any authority to the contrary.

Some of Mr. Thomas' claimed FDUTPA damages are not available to a legal certainty. First, Mr. Thomas cannot claim damages for the $2,500 estimate to professionally install the generator when he concedes he never paid to have it installed. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1303–04 (S.D. Fla. 2014) (granting a motion to dismiss for lack of diversity jurisdiction where the plaintiff's complaint "improperly included claims related

to the 57 products she did not purchase in calculating the amount in controversy."). Second, Mr. Thomas' alleged consequential damages for water and laundry costs while the generator was not working are unavailable under the FDUTPA. *See Butler*, 985 So. 2d at 1140. Third, only the purchase price (including the taxes) constitutes actual damages under the FDUTPA—not Mr. Thomas' alleged $135,000 for the purchase price of the generator multiplied by its 30-year life. *See Corgnati*, 715 So. 2d at 314. Fourth, as set forth above, punitive damages are not available under the FDUPTA. So the only compensatory damages that Mr. Thomas can claim for his alleged FDUTPA violation are the purchase price of the generator plus tax, which total $4,785. That sum, even with prejudgment interest, is far below the $75,000 amount-in-controversy threshold.

### B

For Counts II and III, the fraud claims, Mr. Thomas alleged the following damages. For fraudulent inducement he sought $100,000 for pain and suffering, $200,000 for emotional and mental stress and physical injuries, $50,000 in actual damages, $60,000 in compensatory damages, $100,000 in consequential damages, and $300,000 in punitive damages, for a total of $810,000. For fraudulent misrepresentation, he sought $50,000 in actual damages, $50,000 for pain and suffering, and $100,000 in consequential damages, for a total of $200,000. To bolster his claimed fraud damages, which he addressed jointly in his opposition to the defendants' motion to dismiss, Mr. Thomas alleged that his damages were $3,128

for drinking water, $2,500 in lost garden profits, $72,500 in "loss profits," $2,730 in "compensatory damages," $2,500 for the electrician estimate, $15,000 for pain and suffering, and another $15,000 for undue emotional stress.[3]

Under Florida's "flexibility theory" for fraud claims, Mr. Thomas may recover either his out-of-pocket loss or the loss of the benefit of his bargain for the defective generator. *See In re Weeks Landing, LLC*, 439 B.R. 897, 916 (M.D. Fla. 2010) (citing *Minotty v. Baudo*, 42 So.3d 824 (Fla. 4th DCA 2010)). With respect to compensatory damages, Florida fraud law limits recovery to pecuniary harm. *See Food Fair, Inc. v. Anderson*, 382 So.2d 150, 153 (Fla. 5th DCA 1980) ("The injury sustained in an action for deceit [i.e., fraud] must ordinarily be of a pecuniary nature.").

Again, some of Mr. Thomas' alleged compensatory damages for the fraud claims are clearly unrecoverable to a legal certainty. First, as noted above, Mr. Thomas cannot claim damages for a $2,500 installation estimate that he never alleged that he accepted and paid. Second, we conclude that, to a legal certainty, Mr. Thomas cannot claim $72,500 in "loss profits." Mr. Thomas alleged no facts whatsoever to indicate that he was running a business or to otherwise support his "loss profits" due to the defective generator. Although he specifically alleged lost profits from his

---

[3] We assume that Mr. Thomas, by expressly stating in his response that he was seeking only $15,000 for pain and suffering and only $15,000 for emotional distress, abandoned his claim in the complaint for $300,000 in such damages.

garden, we are left to guess as to what these other "profits" might be.  With respect to actual damages, construing "loss profits" in his favor as actual damages, we conclude that the maximum that Mr. Thomas can allege to a legal certainty for these types of damages is $4,785, the purchase price of the generator plus tax, and prejudgment interest.

Punitive damages can be recovered in Florida for fraud, *see First Interstate Dev. Corp. v. Ablanedo*, 511 So.2d 536, 538-39 (Fla. 1987), and Mr. Thomas claimed that he sought to recover $300,000 in punitive damages from the defendants.  The district court, however, ruled that Mr. Thomas had "no colorable claim for punitive damages in an amount sufficient to meet the amount-in-controversy requirement," D.E. 54 at 4, and Mr. Thomas does not challenge that ruling on appeal.  So we affirm the district court's ruling due to Mr. Thomas' abandonment.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, . . . issues not briefed on appeal by a *pro se* litigant are deemed abandoned.").

Mr. Thomas, therefore, is left with claimed damages of $40,733 (plus some prejudgment interest) for his fraud claims.  That sum is comprised of the price of the generator plus tax ($4,785), compensatory damages ($2,730), costs for water ($3,128), pain and suffering ($15,000), and emotional distress ($15,000).  That is far below the $75,000 amount-in-controversy requirement, particularly given that the cost of the generator plus tax is already being sought in the FDUPTA claim and cannot be recovered twice.

## C

That leaves Count IV, the breach of warranty claim.  Mr. Thomas sought $22,500 in "actual damages" for the cost of the generator multiplied by the five years it was under warranty and $12,000 in compensatory damages, for a total of $34,500.  In his opposition to the motion to dismiss, however, he only asserted $4,500 for the generator, $285 in taxes, $750 for materials and labor used to build the generator platform and purchase a generator regulator, $385 for a Generac service fee, and $17,760 in punitive damages.

Under Florida law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  Fla. Stat. § 672.714(2).  "In a proper case," a buyer may also be able to recover certain incidental and consequential damages, such as costs associated with effecting cover, reasonable expenses caused by associated delays, any loss associated with the needs of which the seller had reason to know, and any injuries to person or property proximately caused by the breach.  *See* §§ 672.714(3), 672.715.[4]

---

[4] Punitive damages are not recoverable for a Florida breach-of-warranty claim unless the breach amounts to an independent tort.  *See Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1106 (11th Cir. 1983) (citing *Bill Branch Chevrolet, Inc. v. Redmond*, 378 So. 2d 319,

Crediting Mr. Thomas' other allegations for consequential and incidental damages in the complaint, the amount of damages that he sought for the breach of warranty claim is $16,485 ($4,785 for the cost of the generator plus tax and $12,000 in compensatory damages). That, again, falls way below $75,000.

### D

"Generally, [under Florida law,] a defendant may not be required to pay twice for the same element of damages." *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 302 (Fla. 2017). Added together, the non-duplicative damages totals for each claim add up to $49,913 ($4,785 for the cost of the generator plus tax + $12,000 in compensatory damages + $3,128 for water + $15,000 for pain and suffering + $15,000 for emotional distress). That amount is well below the requisite $75,000, and the district court properly dismissed the second amended complaint for lack of subject-matter jurisdiction.

### IV

After his second amended complaint was dismissed, Mr. Thomas sought leave to amend again and also challenged the

---

321 (Fla. 2d DCA 1980)). Mr. Thomas never sought punitive damages for his breach of warranty claim in his complaint. Although he argued that he wanted to recover punitive damages in his response to the motion to dismiss, a plaintiff cannot amend his complaint through such a response. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022). So we do not consider punitive damages in the calculus.

district court's order under Rule 60(b). The district court denied the motions and we review both of those denials for abuse of discretion. *See Henson v. Columbus Bank & Trust Co.,* 770 F.2d 1566, 1574 (11th Cir. 1985); *Willard v. Fairfield S. Co., Inc.*, 472 F.3d 817, 821 (11th Cir. 2006).

A district court should give a plaintiff at least one opportunity to amend his complaint, but it is not required to do so if "there has been . . . repeated failure to cure deficiencies by amendments previously allowed" or "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Mr. Thomas was given more than one opportunity to amend, *see* D.E. 48 at 2 n.2 (noting that he filed an initial complaint, a proposed first amended complaint, a proposed second amended complaint, and a second amended complaint), and he still failed to plausibly allege the requisite amount in controversy. His proposed third amended complaint, moreover, did not appear to solve the jurisdictional problem. Under these circumstances, the district court did not abuse its discretion in denying Mr. Thomas leave to file another amended complaint.

We also affirm the district court's denial of Mr. Thomas' Rule 60(b) motion. Under Rule 60(b), a court may relieve a party from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect," or based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(1), (2). Mr. Thomas has not raised any newly discovered

evidence, nor has he pointed specifically to any mistake, inadvertence, surprise, or excusable neglect on the part of the district court. He merely disagrees with the district court's assessment of his alleged damages. The district court did not abuse its discretion in denying his Rule 60(b) motion.[5]

## V

Mr. Thomas' alleged damages failed to meet the jurisdictional minimum to proceed in federal court under diversity jurisdiction. He was not entitled to amend his complaint again, and no newly discovered evidence warranted granting his Rule 60(b) motion.

**AFFIRMED.**

---

[5] Finally, we deny Mr. Thomas' pending motion to strike the defendants' supplemental appendix because he provides no legal arguments to support it. "A motion must state with particularity . . . the legal argument necessary to support it." Fed. R. App. P. 27(a)(2)(A).